

FILED
12/13/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAUNTRELL HARRIS | No. 20 CR 577<br><br>Judge Elaine E. Bucklo |

### PLEA AGREEMENT

SH 1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant SHAUNTRELL HARRIS, and his attorney, AMIR MOHABBAT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

SH 2. The superseding indictment in this case charges defendant with: (a) conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count One); and (b) distribution of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Twenty-Nine and Thirty).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

From in or around April 23, 2020, and continuing through in or around September 1, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant SHAUNTRELL HARRIS, also known as "Trell," conspired

2

with Dexstin Bryant, also known as "Dex," Tremaine Brent, also known as "Bud," Johnnie Grant, also known as "Johnno," Tevin Alverio, also known as "Tevo," Jarvis Blair, Enrique Hollins, also known as "Rique," Sharonda Hosey, also known as "Ronda," Justin Johnson, also known as "BB," Tyjuan McDowell, also known as "Weezy," Rikita Mitchell, Allen Washington, also known as "Peanut," Paul Wilkins, Ina Williams, Oshay Kelley, Dorothy Williams (collectively, the "co-defendants") and others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

SH     More specifically, from approximately April 23, 2020, through approximately September 1, 2020, HARRIS conspired with the co-defendants and others to distribute controlled substances, specifically fentanyl-laced heroin and crack cocaine, to customers primarily on the west side of Chicago. This narcotics-trafficking conspiracy involved the drug trafficking operation managed and operated by co-defendant Bryant (the "Bryant DTO"). The Bryant DTO used telephone number (312) 447-4490 (the "DTO Phone") as a call-up narcotics delivery phone line. Workers for the Bryant DTO took shifts answering the DTO Phone, which was pre-programmed

with customer numbers, took orders for narcotics placed by customers over the DTO Phone, and delivered the ordered narcotics to those customers.

Co-defendant Grant operated the Bryant DTO's stash house out of his residence, which was located on the 800 block of South Karlov Avenue in Chicago, Illinois (the "Grant Residence"). The Grant Residence served as the headquarters for the Bryant DTO, and the place where shift workers commonly transferred the DTO Phone at the beginning and end of their shifts, delivered proceeds from narcotics sales that were coordinated using the DTO Phone, and picked up or dropped off narcotics that were to be sold to customers who ordered narcotics using the DTO Phone. HARRIS worked the DTO Phone beginning no later than June 11, 2020, passing the phone to other conspirators when he was not in possession of it. HARRIS admits that, as part of his responsibilities as a worker, he oftentimes transferred the DTO Phone, narcotics, and narcotics proceeds to others at the Grant Residence or elsewhere at the ends of his shifts.

On June 11, 2020, at approximately 3:50 p.m., HARRIS and co-defendant Bryant had a telephone conversation during which they discussed how narcotics sales with the DTO Phone were slower than usual and that specific DTO customers were unhappy with the quality of drugs the Bryant DTO currently had.

Similarly, on June 14, 2020, at approximately 6:08 p.m., HARRIS had a telephone conversation with Bryant during which Bryant instructed HARRIS to give the DTO Phone to co-defendant Enrique Hollins when HARRIS finished working his

4

shift with the DTO Phone. During the call, HARRIS also advised Bryant that drug sales were beginning to go well during the shift.

HARRIS acknowledges that, between June 11, 2020, and September 1, 2020, HARRIS and others whose actions were (a) within the scope of the jointly undertaken criminal activity, (b) in furtherance of that activity, and (c) reasonably foreseeable to HARRIS, distributed approximately 8.35 grams of fentanyl-laced heroin and approximately 3.22 grams of cocaine base to DTO Phone customers each day, for a total of 684.7 grams of fentanyl-laced heroin and 264 grams of cocaine base during that period.

HARRIS also admits that, between August 29, 2019, and September 3, 2019, he distributed fentanyl to undercover officers on two separate occasions. In total, HARRIS distributed approximately 6.3 grams of substances containing fentanyl to undercover Chicago Police officers on those two occasions in exchange for a total of $100.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the Court also must impose a term of supervised release of at least three years, and up to any number of years, including life.

5

*S.H*     b.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

*S.H*     8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

*S.H*     9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

*S.H*     a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

6

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

§¶ b. **Offense Level Calculations**.

i. The amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is held accountable is approximately 691 grams of fentanyl-laced heroin and approximately 264 grams of cocaine base. Those substances yield a Converted Drug Weight of approximately 2,670 kilograms. Therefore, the base offense level is 30 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(5) because the offense involved more than 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight.[1]

§¶ ii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

---

[1] The Sentencing Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual, contains a powder-to-crack cocaine disparity. As set forth in testimony before Congress on June 22, 2021, the Department of Justice supports elimination of the powder-to-crack sentencing disparity. The Court may, consistent with the law and current sentencing framework, consider the disparity in assessing the section 3553(a) factors at sentencing. In this case, if crack cocaine was treated as powder cocaine under the Sentencing Guidelines Manual currently in effect, the base offense level for defendant would remain at 30 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(5), because 691 grams of fentanyl and 264 grams of cocaine is the equivalent of 1,780 kilograms of Converted Drug Weight, which is more than 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight.

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

S.H iii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

S.H c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant has 16 criminal history points and defendant's criminal history category is VI:

S.H i. On or about September 19, 2006, defendant was convicted of receipt/possession of a stolen vehicle in the Circuit Court of Cook County, Illinois, and sentenced to three years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(d)(1), defendant receives three criminal history points for this conviction.

S.H ii. On or about June 20, 2007, defendant was convicted of battery and resisting a peace officer in the Circuit Court of Cook County, Illinois, and

8

sentenced to 30 days' imprisonment. Pursuant to Guideline § 4A1.2(e)(2), defendant receives no criminal history points for this sentence.

S. H iii. On or about September 7, 2007, defendant was convicted of criminal trespass to a vehicle and driving on a revoked license in the Circuit Court of Cook County, Illinois, and sentenced to 10 days' imprisonment. Pursuant to Guideline § 4A1.2(e)(2), defendant receives no criminal history points for this sentence.

S. H iv. On or about February 28, 2008, defendant was convicted of possession/sale of a stolen vehicle in the Circuit Court of Cook County, Illinois, and sentenced to 7 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

S. H v. On or about November 28, 2012, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 4 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

S. H vi. On or about January 7, 2016, defendant was convicted of delivery of or possession with intent to deliver a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 4 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

S.H vii.     On or about January 7, 2016, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 3 years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(a)(2), defendant receives three criminal history points for this sentence because the sentence was imposed for an offense that was separated by an intervening arrest from the offense referenced above in paragraph 9(c)(vi).

S.H viii.    On or about April 3, 2019, defendant was convicted of driving on a revoked or suspended license in the Circuit Court of Henderson County, Illinois, and sentenced to 30 days' imprisonment. Pursuant to Guideline §§ 4A1.1(c) and 4A1.2(c)(1), defendant receives one criminal history point for this sentence.

S.H  d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 27, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 130 to 162 months' imprisonment, in addition to any supervised release and fine the Court may impose.

S.H  e.    Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case.

10

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

11

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

S. H 13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $100 as compensation for government funds that defendant received during the investigation of the case.

S. H 14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

S. H 15. Defendant agrees to waive and abandon any right, title, or interest he has in the following property: the cellular telephone assigned telephone number (312) 447-4490, which has been referred to as the DTO Phone in this agreement. Defendant understands that the government, after publication of notice to others who may have an interest in the above property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

S. H 16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of

the superseding indictment as to defendant, as well as the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

S. H 17. This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 577.

S. H 18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

S H 19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

S. H a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

13

S.H i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

S.H ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

S.H iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

S.H iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

S.H  v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

S.H  vi. At a trial, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

S.H  vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

S.H  **b. Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

S.H  20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

15

**Presentence Investigation Report/Post-Sentence Supervision**

S. H 21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

S. H 22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

S. H 23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual

16

income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

S.H. 28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

S.H. 29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

S.H 30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 11-27-23

_Morris Pasqual_ by SME
MORRIS PASQUAL
Acting United States Attorney

SHAUNTRELL HARRIS
Defendant

PRASHANT KOLLURI
Digitally signed by PRASHANT KOLLURI
Date: 2023.09.12 15:49:50 -05'00'
PRASHANT KOLLURI
Assistant U.S. Attorney

AMIR MOHABBAT
Attorney for Defendant