

FILED

12/13/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JARVIS BLAIR

No. 20 CR 577-5
No. 20 CR 780

Judge Elaine E. Bucklo

## PLEA AGREEMENT

1.    This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant JARVIS BLAIR, and his attorneys, CHRISTOPHER T. GROHMAN and CARLY CHOCRON, is made pursuant to Rules 11 and 20 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.    The defendant has been charged in two separate criminal cases:

a.    In case 20 CR 577, pending in the Northern District of Illinois, the superseding indictment charges defendant with (a) conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count One); (b) distribution of fentanyl and heroin,

in violation of Title 21, United States Code, Section 841(a)(1) (Count Twenty-One); and (c) possession with intent to distribute and distribute a controlled substance, namely, fentanyl, heroin, and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) (Count Twenty-Five) (the "Northern District of Illinois Indictment").

      b.    In case 20 CR 780, originally filed in the Central District of Illinois as 20 CR 30058 and now pending in the Northern District of Illinois, the indictment charges defendant with unlawfully possessing a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (the "Central District of Illinois Indictment").

3.    Defendant has read the charges against him contained in the Northern District of Illinois Indictment and Central District of Illinois Indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following charges: Count One of the Northern District of Illinois Indictment, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a mixture and

substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and to the Central District of Illinois Indictment, which charges defendant with unlawfully possessing a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the Northern District of Illinois Indictment and the charge contained in the Central District of Illinois Indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

   a.      With respect to Count One of the Northern District of Illinois Indictment

From in or around April 23, 2020, and continuing through in or around September 1, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JARVIS BLAIR conspired with Dexstin Bryant, also known as "Dex," Tremaine Brent, also known as "Bud," Johnnie Grant, also known as "Johnno," Tevin Alverio, also known as "Tevo," Enrique Hollins, also known as "Rique," Shauntrell Harris, also known as "Trell," Sharonda Hosey, also known as "Ronda," Justin Johnson, also known as "BB," Tyjuan McDowell, also known as

3

"Weezy," Rikita Mitchell, Allen Washington, also known as "Peanut," Paul Wilkins, Ina Williams, Oshay Kelley, Dorothy Williams (collectively, the "co-defendants") and others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

More specifically, from approximately April 23, 2020, through approximately September 1, 2020, BLAIR conspired with the co-defendants and others to distribute controlled substances, specifically fentanyl-laced heroin and crack cocaine, to customers primarily on the west side of Chicago. This narcotics-trafficking conspiracy involved the drug trafficking organization managed and operated by co-defendant Bryant (the "Bryant DTO"). The Bryant DTO used telephone number (312) XXX-4490 (the "DTO Phone") as a call-up narcotics delivery phone line. Workers for the Bryant DTO took shifts answering the DTO Phone, which was pre-programmed with customer numbers, took orders for narcotics placed by customers over the DTO Phone, and delivered the ordered narcotics to those customers.

4

Co-defendant Grant operated the Bryant DTO's stash house out of his residence, which was located on the 800 block of South Karlov Avenue in Chicago, Illinois (the "Grant Residence"). The Grant Residence served as the headquarters for the Bryant DTO, and the place where shift workers commonly transferred the DTO Phone at the beginning and end of their shifts, delivered proceeds from narcotics sales that were coordinated using the DTO Phone, and picked up or dropped off narcotics that were to be sold to customers who ordered narcotics using the DTO Phone. BLAIR worked the DTO Phone for regular periods of time beginning no later than August 11, 2020, and continuing until September 1, 2020. BLAIR passed DTO Phone to other conspirators when he was not in possession of it. BLAIR acknowledges that, as part of his responsibilities as a worker, he transferred the DTO Phone, narcotics, and narcotics proceeds to other conspirators.

For instance, on August 11, 2020, BLAIR sold fentanyl-laced heroin to an undercover law enforcement officer ("UC-11") posing as a DTO Phone customer. Specifically, at approximately 6:41 p.m., UC-11 placed a call to the DTO Phone to order narcotics and spoke with BLAIR. During this call, UC-11 asked, "Y'all here yet?" BLAIR replied, "Who it is? I just got this joint [the DTO Phone]. Uh how long? Where you at?" UC-11 said, "I'm at Lake and Western." BLAIR replied, "What you need over there?" UC-11 replied, "5 soft [heroin baggies]." BLAIR replied, "Alright, here I come."

Later that day, in order to fill UC-11's order, BLAIR drove his vehicle, with co-defendant Rikita Mitchell in the front passenger seat, and stopped near 2358 West Lake Street in Chicago. While UC-11 was near BLAIR's vehicle, Mitchell gestured for UC-11 to approach. When UC-11 approached the vehicle, Mitchell asked "What you need?" UC-11 replied, "Give me five soft [heroin baggies]." Mitchell then handed five blue tinted Ziploc-style baggies each containing fentanyl-laced heroin to UC-1 in exchange for $50. The five baggies that BLAIR sold to UC-11 contained approximately 1.59 grams of fentanyl-laced heroin.

BLAIR acknowledges that, between August 11, 2020, and September 1, 2020, BLAIR and others whose actions were (a) within the scope of the jointly undertaken criminal activity, (b) in furtherance of that activity, and (c) reasonably foreseeable to BLAIR, distributed approximately 8.35 grams of fentanyl-laced heroin and approximately 3.22 grams of cocaine base to DTO Phone customers each day, for a total of 183.7 grams of fentanyl-laced heroin and 70.84 grams of cocaine base during that 22-day period.

b.      With respect to the Central District of Illinois Indictment

On or about August 6, 2020, in Macoupin County, in the Central District of Illinois, Springfield Division, JARVIS BLAIR, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm, namely, a Smith & Wesson SD9 9MM handgun bearing serial number FBM2935, which firearm had

6

traveled in interstate commerce prior to defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

Specifically, on August 6, 2020, BLAIR knowingly possessed a Smith & Wesson SD9 9MM handgun bearing serial number FBM2935 (the "Smith & Wesson Firearm"). On that day, BLAIR drove a red Mercury Milan on Interstate 55 near the mile post 43.5 in Macoupin County, Illinois. BLAIR possessed the Smith & Wesson Firearm, which was loaded at the time, in the trunk of the Milan. At the time, BLAIR knew the Smith & Wesson Firearm was in the trunk and had the ability to access and exercise control over it.

On August 6, 2020, BLAIR knew that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, as further described in subparagraphs 9(c)(ii), 9(c)(iv), 9(c)(ix), and 9(c)(x), below. BLAIR acknowledges that the Smith & Wesson Firearm was manufactured outside of the State of Illinois and traveled in interstate and foreign commerce prior to his possession of the firearm. BLAIR further acknowledges that the Smith & Wesson Firearm was stolen.

### Maximum Statutory Penalties

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count One of the Northern District of Illinois Indictment carries a maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. Pursuant to Title 18, United States Code, Section 3561,

defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $5,000,000. Defendant further understands that the Court also must impose a term of supervised release of at least four years, and up to any number of years, including life.

b.    The Central District of Illinois Indictment carries a maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the Court also may impose a term of supervised release of not more than three years.

c.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 50 years' imprisonment, and the minimum sentence is 5 years' imprisonment. In addition, defendant is subject to a total maximum fine of $5,250,000, a period of supervised release at least four years, up to life, and special assessments totaling $200, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

8

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

b.     **Offense Level Calculations**.

Count One of the Northern District of Illinois Indictment

i.     The amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is held accountable is approximately 183.7 grams of fentanyl and approximately 70.84 grams of cocaine

9

base. Those substances yield a Converted Drug Weight of approximately 712 kilograms. Therefore, the base offense level is 28 pursuant to Guidelines §§ 2D1.1(a)(6) and 2D1.1(c)(6) because the offense involved more than 700 kilograms but less than 1,000 kilograms of Converted Drug Weight.[1]

<u>The Central District of Illinois Indictment</u>

ii.      The base offense level is 20, pursuant to Guideline § 2K2.1(a)(6), because defendant committed the instant offense subsequent to sustaining a felony conviction for a controlled substance offense, namely, the conviction set forth in Paragraph 9(c)(x) below.

iii.      The offense level is increased by two levels pursuant to Guideline § 2K2.1(b)(4)(A) because the firearm was stolen.

iv.      Therefore, the total offense level is 22.

<u>Grouping</u>

v.      Pursuant to Guideline § 3D1.2, Count One of the Northern District of Illinois Indictment and the Central District of Illinois Indictment do not group.

---

[1] The Sentencing Guidelines Manual currently in effect, namely, the November 2023 Guidelines Manual, contains a powder-to-crack cocaine disparity. The Department of Justice supports eliminating the powder-to-crack sentencing disparity, and will therefore advocate for a sentence consistent with the Guidelines for powder cocaine rather than crack cocaine. The court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the section 3553(a) factors at sentencing.

vi.     Pursuant to Guideline § 3D1.4(a), Count One of the Northern District of Illinois Indictment, which has an offense level of 28, counts as one Unit because it is the group with the highest offense level.

vii.    Pursuant to Guideline § 3D1.4(b), the Central District of Illinois Indictment counts as one-half Unit because it is between five and eight levels less serious than Count One of the Northern District of Illinois Indictment.

viii.   Pursuant to Guideline § 3D1.4, 1.5 Units results in a one-level increase to the group with the highest offense level, which is Count One of the Northern District of Illinois Indictment.

ix.     Therefore, the total combined offense level is 29.

Acceptance of Responsibility

x.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting

11

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 12 and defendant's criminal history category is V:

      i. On or about January 14, 2002, defendant was convicted of assault in the General Sessions Court of Shelby County, Tennessee, and sentenced to eight days' imprisonment. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

      ii. On or about April 15, 2002, defendant was convicted of theft of property and aggravated robbery in the Criminal Court of Shelby County, Tennessee, and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

      iii. On or about October 15, 2002, defendant was convicted of indecent exposure in the General Sessions Court of Shelby County, Tennessee, and sentenced to 31 days' imprisonment. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

    iv.  On or about August 4, 2006, defendant was convicted of aggravated burglary and theft of property in the Criminal Court of Shelby County, Tennessee, and sentenced to two years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

    v.  On or about June 13, 2007, defendant was convicted of possession of marijuana in the General Sessions Court of Shelby County, Tennessee, and sentenced to a $250 fine. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

    vi.  On or about May 19, 2009, defendant was convicted of driving with a suspended license in the General Sessions Court of Shelby County, Tennessee, and sentenced to two days' imprisonment. Pursuant to Guidelines §§ 4A1.2(c)(1) and 4A1.2(e), defendant does not receive criminal history points for this sentence.

    vii.  On or about January 15, 2010, defendant was convicted of unlawful possession of cannabis in the Criminal Court of Macon County, Illinois, and sentenced to nine months' conditional discharge. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

    viii.  On or about March 16, 2010, defendant was convicted of domestic battery in the Circuit Court of Macon County, Illinois, and sentenced to 30 days' imprisonment. Pursuant to Guideline § 4A1.2(e), defendant does not receive criminal history points for this sentence.

ix.      On or about September 24, 2010, defendant was convicted of residential burglary in the Circuit Court of Peoria County, Illinois, and sentenced to 12 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

x.      On or about May 16, 2016, defendant was convicted of driving on a suspended license in the General Sessions Court of Shelby County, Tennessee, and sentenced to two days' imprisonment. Pursuant to Guideline § 4A1.2(c)(1), defendant does not receive criminal history points for this sentence.

xi.      On or about December 12, 2016, defendant was convicted of possession of marijuana with intent to distribute in the Criminal Court of Shelby County, Tennessee, and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

xii.      On or about September 19, 2018, defendant was convicted of possession of marijuana in the Criminal Court of Shelby County, Tennessee, and sentenced to 11 months and 29 days' imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this sentence.

xiii.      On or about March 4, 2020, defendant was convicted of criminal attempt—possession of marijuana in the General Sessions Court of Shelby County, Tennessee, and sentenced to two days' imprisonment. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

14

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 26 which, when combined with the anticipated criminal history category of V, results in an anticipated advisory Sentencing Guidelines range of 110 to 137 months' imprisonment, in addition to any supervised release and fine the Court may impose. If crack cocaine were treated as powder cocaine under the Sentencing Guidelines Manual currently in effect for Count One of the Northern District of Illinois Indictment, then (1) the anticipated offense level for that offense would be 26, pursuant to Guideline § 2D1.1(c)(7), because 183.7 grams of fentanyl and 70.84 grams of cocaine is the equivalent of 473.42 kilograms of Converted Drug Weight, which is at least 400 kilograms, but less than 700 kilograms of Converted Drug Weight; (2) the total offense level for the Northern District of Illinois Indictment and the Central District of Illinois Indictment would be 28, because the offense level applicable to the offense charged in the Central District of Illinois Indictment is 1 to 4 levels less serious, and two units are added; and (2) the applicable Sentencing Guidelines range based on a combined total offense level of 25, after the reduction for timely acceptance of responsibility, would be 100 to 125 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment.

e. Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature and are non-binding

predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts and forfeiture allegation in the Northern District of Illinois Indictment as to defendant.

### Forfeiture

15.    Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property involved in or used to commit or facilitate the offense.

16.    Defendant agrees to forfeiture of the following specific property to the United States: a Smith & Wesson SD9 9MM handgun bearing serial number FBM2935 and associated ammunition. In doing so, defendant admits that the property described above was involved in and used to commit and facilitate the offense alleged in the Central District of Illinois Indictment. Defendant consents to

17

the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

17.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property: the cellular telephone assigned telephone number (312) XXX-4490, which has been referred to as the DTO Phone in this agreement. Defendant understands that the government, after publication of notice to others who may have an interest in the above property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

18.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture

constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in cases 20 CR 577-5 and 20 CR 780.

20.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

19

        i.        The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.        If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.        If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the Northern District of Illinois Indictment and Central District of Illinois Indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.        If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.      With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.      **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this,

21

defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

22.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

23.     Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charges against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

**Presentence Investigation Report/Post-Sentence Supervision**

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax

23

returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

24

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _12-13-23_

MORRIS PASQUAL
Acting United States Attorney

JARVIS BLAIR
Defendant

RAMON VILLALPANDO
Assistant U.S. Attorney

CHRISTOPHER T. GROHMAN
CARLY A. CHOCRON
Attorneys for Defendant

26