IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| Plaintiff, ) | | |
| ) | No. 20 CR 577-12 | |
| ) | | |
| vs. ) | Judge Elaine E. Bucklo | |
| ) | | |
| **ALLEN WASHINGTON**, ) | | |
| Defendant. ) | | |

**DEFENDANT ALLEN WASHINGTON'S SENTENCING MEMORANDUM**

NOW COMES the defendant, **ALLEN WASHINGTON,** by his attorney, **PATRICK E. BOYLE,** and submits this sentencing memorandum, and respectfully requests, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and the Supreme Court's opinions in *Gall v. United States*, 128 S. Ct. 586 (2007) and *Kimbrough v. United States*, 128 S.Ct 558 (2007), that this court impose a below guidelines sentence of 40 months imprisonment, a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(2). In support of this sentencing request, Mr. Washington offers the following:

**I. INTRODUCTION**

Allen Washington, a 32 year-old man is prepared to be sentenced by this Court for his brief involvement in a relatively short-lived drug conspiracy. He accepted full responsibility for his role in the offense and pled guilty pursuant to a written plea agreement. Once Mr. Washington serves whatever sentence this Court deems is appropriate, he will return to his family and obtain legitimate work and be a productive, law abiding member of society. Mr. Washington hopes that when this Court considers all of the facts as set forth in the presentence

investigation report, the sentencing recommendation of probation, and the arguments made here and in open court, this Court will fashion and impose a reasonable sentence of 40 months imprisonment, a sentence that reflects the seriousness of the offense and his actual role in the offense, while still allowing him an opportunity to move forward as best as he can and still be an asset to his family and community.

**II.     ADVISORY GUIDELINE RANGE**

The defendant agrees with the Probation Officer's calculation that the advisory guideline range in this case is 110 to 137 months based upon a total offense level of 25 and a criminal history category of VI.  Further, the PSR notes that:

> "The plea agreement reflects that the Department of justice supports elimination of the powder-to-crack cocaine disparity that is present in the November 2023 Guideliens Manual.  The government notes that the Court may condider this disparity when determining an appropriate setence in this case." (PSR at para. 125).

Probation and Mr. Washington believe that a sentence well below this advisory guideline range is called for here because of the unique circumstances of Allen Washington's life and his limited role in the offense and all of the mitigating and positive factors to be discussed below.  All of these factors are highly relevant and must be considered pursuant to the current sentencing caselaw and Section 3553(a), many of which are not adequately taken into account by the advisory guideline range.  Significantly, despite the advisory guideline range, Probation is recommending a sentence of 48 months imprisonment for Mr. Washington.

### III. THE LEGAL STANDARD: SENTENCING BELOW THE GUIDELINE RANGE POST-*BOOKER*

Even before the *Booker* decision and its progeny, it was abundantly clear that our jurisprudence suggests that one of the main goals of the sentencing factors is to consider each defendant appearing before the court as an individual. As the Supreme Court explained in *Koon v. United States*, 518 U.S. 81 (1996), there is a tradition in this country of crafting a sentence based on each individual to come before the court with that person's unique characteristics in mind:

> "[it] has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113.

The basis of this tradition is the notion that the "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949); see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.") Thus, this Court should take into account much more than the offense and the government's allegations against Mr. Washington when fashioning a unique sentence that is reasonable and appropriate here.

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court made the Sentencing Guidelines effectively advisory. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guideline ranges . . . but it permits the court to tailor the sentence in light of other statutory concerns as well . . ." *Booker*, 125 S.Ct. at 756-57. The

3

Guidelines calculations are to be treated "as just one of a number of sentencing factors." *United States v. Ranum*, 353 F.Supp.2d 984, 985-87 (E.D.Wis.2005). The *Ranum* court rejected the notion that the Guidelines must be afforded heavy weight and concluded that "courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the Section 3553(a) factors." *Ranum*, 353 F.Supp.2d at 987-89. The Section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed:
>> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.
>> (b) to afford adequate deterrence to criminal conduct;
>> (c) to protect the public from further crimes of the defendant;
>> (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the advisory guideline range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities, and
> (7) the need to provide restitution to any victims of the offense. *18 U.S.C. Section 3553(a)*.

Most importantly, Section 3553(a) directs the court, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" sub-section (a)(2). *Id*. This is the so-called "parsimony provision," which requires district courts to impose the minimum term required to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. *See, e.g., United States v. Cull*, 446 F.Supp.2d 961, 963 (E.D. Wis 2006); see also *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir.2006) (stating that the parsimony provision serves as "the

guidepost for sentencing decisions post-*Booker*). In *United States v. Gall*, 552 U.S. 38, 128 S.Ct. 586 (2007), the Supreme Court upheld a district court's sentence of probation despite the fact that the advisory guideline range for the defendant was 30 to 37 months and held that there is no rule that requires "extraordinary" circumstances to justify a sentence outside the guideline range.

IV. **SECTION 3553(a) FACTORS & MITIGATION IN ALLEN WASHINGTON'S CASE**

**A. The nature and circumstances of the offense:**

As is set forth in the government's version of the offense, the plea agreement, and the PSR, Mr. Washington acknowledges that between August and September 2020 he served as a street-level working the charged drug conspiracy:

> "The defendant acknowledges that between August 5, 2020, and September 1, 2020, he and others distributed approximately 8.35 grams of fentanyl-laced heroin and approximately 3.22 grams of cocaine base to DTO phone customers each day . . ." (PSR at para. 16).

The PSR notes that Mr. Washington partcipated in two drug sales with undercover law enforcement – one of which for a sale of $50 and the other for $40. (PSR at paras. 13-14). Mr. Washington was unarmed during this actvity and played no role in any managerial decision making and was not aware that the heroin that was being sold contained any fentanyl.

While recognizing the seriousness of his offense, which has now resulted in a federal felony conviction, all of the accompanying collateral consequences, and incarceration in the Kankakee County Jail since his arrest, it is respectfully submitted that Mr. Washington's involvement was relatively minor and brief. Consequently, his requested sentence here would be appropriate.

5

**B. The history and characteristics of Allen Washington:**

Sadly, the facts of Mr. Washington's life will be all too familiar to this Court as it is very similiar to many of the African American males that end up in federal court facing drug charges. Allen was born to a single mother and spent his earliest years in the Cabrini Green Housing projects in Chicago. Allen's mom did her best despite her lmited resources and Allen acknowledged that "he was provided with adequate food, shelter, and clothing during his childhood, despite his family's limited financial resources." (PSR at para. 72).

When Allen was seven years old his mother moved the family to the west side of Chicago. Unfortunately, the neighborhood was plagued by gangs and Allen dropped out of high school before he was able to graduate. To support himself, Allen made the unfortunate decsion to sell drugs and he would also possess guns which he felt was sadly necessary to defend himself. But Allen is not violent and he has actually been the victim of random gun violence, being shot on two different occasions in the summer of 2020. (PSR at para. 82). It was these shootings that contributed to Allen losing his legitimate employment at Ferrara Pan Candy and a restaraant where he worked as a dishwasher and busboy. Unemployed and desperate for some income during the pandemic, Allen unfortunately agreed to sell some drugs which led at his arrest and charges here.

Allen has been in a steady romantic relationship since 2015 with Ms. Spencer who works as a security guard. (PSR at para. 75) Allen has a daughter Riannah from a previous relationship who is now age 17. Riannah has suffered from depression and Allen is desperate to serve his sentence and be reunited with his daughter and provide her positive emotional support during this crucial period of her life. (PSR at para. 76). "The defendant reported he is participating in

6

Thinking for a Change, which is a class that includes cognitive restructuring and development of social and problem-solving skills during his detainment at the Jerome Combs Detention Ceneter in Kankakee, Illinois." (PSR at para. 98). Further, the "defendant's parents indicated the defendant performed construction work at St. Leonard's Ministries in approximately 2017 and the defendant expressed an interest in participating in a vocational training program in the future to continue to learn about construction." (PSR at para. 97). Further, both of Allen's parents are currently employed and both are willing and able to help Allen obtain and maintain legitimate employment after he serves his sentence. (PSR at para. 69).

### C. Punishment Should Reflect the Seriousness of the Offense

The consensus of recent jurisprudence suggests that mandatory minimums and guideline sentences for drug offenses has often been far to harsh. Changing policies at the Department of Justice, including the groundbreaking Holder memorandums, and recent bipartisan sentencing reform bills, all recognize a shift to a more rational and consequently less punitive form of punishment. These long overdue reforms recognize the objective evidence that a long prison term for a nonviolent drug offender is greater than necessary to serve sentencing purposes under Section 3553(a)(2). Much of the disconnect stems from Congress's mistaken belief that drug quantity relates to an offender's role in the offense and thus his culpability, justifying significant retribution. That mistake is compounded by the absence of evidence that quantity-based mandatory minimums serve any other purpose of punishment other than retribution. Here, when this Court considers the actual role and conduct that the defendant was charged with and convicted of, it should conclude that a sentence within the advisory guideline range would be much greater than necessary.

Here, Mr. Washington is requesting a sentence of 40 months imprisonment. Such a sentence reflects the seriousness of the offense and the pernicious role narcotics play in our society. But it also takes into account who Mr. Washington is beyond his offense and appreciates his relatively brief, minor and non-violent role in this drug case. 40 months of imprisonment, followed by 3 years of supervised release, would be a sentence that is "sufficient but not greater than necessary."

### D. The Need for Deterrence & Need for Incapacitation

The consensus today is that lengthy prison sentences are not an effective deterrent. Similarly, the evidence shows that non-violent drug offenders do not need lengthy prison sentences to protect the public. Mr. Washington respects and appreciates probation's suggestion that he could benefit from counseling and participating in a substance abuse program as a condition of his supervised rleases which should also greatly reduce the risk of recidivism.

Mr. Washington's risk of recidivism is reduced even further by the fact that he is now 32-years-old and has been detained in Kankakee County during a pandemic far from his family and loved ones. Mr. Washington never wants to be in a similar position and he knows he can no longer engage in criminal conduct such as drug dealing. It is well established that recidivism rates drop precipitously as defendants get older. If fact, studies would seem to indicate that Mr. Washington's chances of recidivism would actually be reduced if he receives a shorter prison sentence, rather than a lengthy one. According to one study by The Sentencing Project, longer prison sentences have been associated with a 3% increase in recidivism. When prison sentences are relatively short (and here the requested sentence of 40 months is not short but still significant), offenders are more likely to maintain their ties to family, employers, and their

community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed or aged-out of legitimate employment opportunities.

### E. The Need to Avoid Sentencing Disparity Between Co-Defendants

Within the context of this case, Mr. Washington's co-defendants (of the 17 defendants charged, only 4 have been sentenced at the time of this writing) have received varying sentences, according to each person's history and characteristics, and their level of involvement in the conspiracy:

(1) Enrique Hollins pled guilty and was sentenced on 5/31/2023 to time served andf four years of supervised release.

(2) Rikita Mitchell pled guilty and was sentenced on 10/27/2023 to six months custody and three years of supervised release.

(3) Ina Williams pled guilty on 8/16/2023 and was transferred to the Sentencing Options that Achieve Results (SOAR) court.

(4) Oshay Kelley pled guilty and was sentenced on 4/7/2023 to 30 days home confinement (time considered served.

Probation's recommended sentence of 48 months notes that "the recommended sentence also considers the need to avoid unwarranted sentence disparities among codefendants who were convicted of similar conduct." (Sentencing Recommendation Page 2).

### F. Kinds of Sentences Available

This Court must now consider all of "the kinds of sentences available" by statute, section 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" zones recommend only a prison term. *See, Gall*, 128 S.Ct. at 602 and n.11. Congress has directed that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for

those violent and serious criminal offenders who pose the most dangerous threat to society . . ." *See,* Pub. L. No. 98-473, Section 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. Section 3551 note).

Mr. Washington is very remorseful for his illegal conduct and is committed to never breaking the law again. He has a thoughtful and realistic plan to make sure he leads a completely law abiding life going forward. This honest, reflective and genuine repentance supports this Court imposing a sentence below the advisory guideline range. *U.S. v. Rutherford*, 323 F.Supp.2d 911, 914 (E.D. Wisc. 2004) "truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and rebuild their lives," citing *U.S. v. Sally*, 116 F.3d 76, 81 (3rd Cir. 1997).

Consequently, here, his requested sentence of 40 months imprisonment followed by three years of supervised release with any and all reasonable conditions is appropriate. Such a sentence would satisfy the mandate that the Court impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in sub-section *18 U.S.S.C. Section 3553(a).* Finally, Mr. Washington does not have any objection to the proposed conditions of his supervised release as discussed in the presentence investigation report on pages 26- 31 of said report.

**WHEREFORE**, Defendant Allen Washington respectfully requests that this Court exercise its discretion, consider all of the relevant factors of 18 U.S.C. Section 3553(a), and all of the arguments made here and in open court, and sentence Mr. Washington to: (1) a sentence of 40 months imprisonment; and (2) three years supervised release with any and all appropriate conditions.

                                        Respectfully submitted,

By:    s/ Patrick E. Boyle
           By his Attorney Patrick E. Boyle

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave. Suite 562
Chicago, IL 60601
(312) 565-2888

## CERTIFICATE OF SERVICE

I, Patrick E. Boyle, an attorney, that on December 31, 2023, I electronically filed the foregoing **Defendant's Sentencing Memorandum** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

By: s/ Patrick E. Boyle
PATRICK E. BOYLE