

FILED
1/24/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TYJUAN MCDOWELL

No. 20 CR 577

Judge Elaine E. Bucklo

## PLEA AGREEMENT

1.    This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant TYJUAN MCDOWELL, and his attorney, JOSHUA B. ADAMS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.    The superseding indictment in this case charges defendant with: (a) conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count One); and (b) distribution of fentanyl, heroin, and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Three, Ten, Fourteen and Sixteen).

3.      Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the superseding indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

From in or around April 23, 2020, and continuing through in or around September 1, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant TYJUAN MCDOWELL, also known as "Weezy," conspired

2

with Dexstin Bryant, also known as "Dex," Tremaine Brent, also known as "Bud," Johnnie Grant, also known as "Johnno," Tevin Alverio, also known as "Tevo," Jarvis Blair, Shauntrell Harris, also known as "Trell," Enrique Hollins, also known as "Rique," Sharonda Hosey, also known as "Ronda," Justin Johnson, also known as "BB," Rikita Mitchell, Allen Washington, also known as "Peanut," Paul Wilkins, Ina Williams, Oshay Kelley, Dorothy Williams (collectively, the "co-defendants") and others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

More specifically, from approximately April 23, 2020, through approximately September 1, 2020, MCDOWELL conspired with the co-defendants and others to distribute controlled substances, specifically fentanyl-laced heroin and crack cocaine, to customers primarily on the west side of Chicago. This narcotics-trafficking conspiracy involved the drug trafficking organization managed and operated by co-defendant Bryant (the "Bryant DTO"). The Bryant DTO used telephone number (312) XXX-4490 (the "DTO Phone") as a call-up narcotics delivery phone line. Workers for the Bryant DTO took shifts answering the DTO Phone, which was pre-programmed

3

with customer numbers, took orders for narcotics placed by customers over the DTO Phone, and delivered the ordered narcotics to those customers.

Co-defendant Grant operated the Bryant DTO's stash house out of his residence, which was located on the 800 block of South Karlov Avenue in Chicago, Illinois (the "Grant Residence"). The Grant Residence served as the headquarters for the Bryant DTO, and the place where shift workers commonly transferred the DTO Phone at the beginning and end of their shifts, delivered proceeds from narcotics sales that were coordinated using the DTO Phone, and picked up or dropped off narcotics that were sold to customers who ordered narcotics using the DTO Phone. MCDOWELL worked the DTO Phone beginning no later than June 13, 2020, passing the phone to other conspirators when he was not in possession of it. MCDOWELL admits that, as part of his responsibilities as a DTO Phone worker, he oftentimes transferred the DTO Phone, narcotics, and narcotics proceeds to others at the Grant Residence or elsewhere at the ends of his shifts.

For instance, on June 13, 2020, MCDOWELL sold narcotics to an undercover law enforcement officer ("UC-4") posing as a DTO Phone customer. Specifically, on June 13, 2020, at approximately 5:41 p.m., UC-4 called the DTO Phone, which MCDOWELL answered, to purchase narcotics. During the call, MCDOWELL agreed to sell UC-4 five baggies of fentanyl-laced heroin for $50. At approximately 7:17 p.m. MCDOWELL and co-defendant Ina Williams arrived in a vehicle at the agreed-upon location, which was a grocery store parking lot located on the 2000 block of West

Madison Street in Chicago. There, MCDOWELL and Williams sold UC-4 approximately 2.416 grams of fentanyl-laced heroin in exchange for $50.

Furthermore, on June 25, 2020, at approximately 8:34 a.m., MCDOWELL and co-defendant Dexstin Bryant had a telephone conversation to discuss DTO Phone narcotics sales and another DTO Phone worker. During the call, MCDOWELL and Bryant discussed what workers would work which shifts. MCDOWELL also told Bryant that, while sales were proceeding well, customers had been complaining about the quantity of drugs in each package.

In addition, on June 27, 2020, MCDOWELL sold narcotics to another undercover law enforcement officer ("UC-6") posing as a DTO Phone customer. Specifically, on June 27, 2020, at approximately 1:36 p.m., UC-6 called the DTO Phone, which MCDOWELL answered, to purchase narcotics. During the call, UC-6 asked to purchase $200 worth of heroin/fentanyl, and MCDOWELL responded that he had only $140 worth of product left. MCDOWELL and UC-6 agreed to meet at a grocery store parking lot located on the 2000 block of West Madison Street in Chicago. At approximately 1:44 p.m., UC-6 met MCDOWELL at the grocery store parking lot. There, MCDOWELL sold UC-6 approximately 4.98 grams of fentanyl-laced heroin in exchange for $140.

MCDOWELL further admits that (a) on July 13, 2020, he sold 1.64 grams of fentanyl-laced heroin for $40 to an undercover law enforcement officer (UC-7) posing as a DTO Phone customer, and (b) on August 5, 2020, he and co-defendant Allen

5

Washington sold 1.004 grams of fentanyl-laced heroin and 0.083 grams of crack cocaine (cocaine base) for $40 to an undercover law enforcement officer (UC-16) posing as a DTO Phone customer.

MCDOWELL acknowledges that, between June 13, 2020, and September 1, 2020, MCDOWELL and others whose actions were (a) within the scope of the jointly undertaken criminal activity, (b) in furtherance of that activity, and (c) reasonably foreseeable to MCDOWELL, distributed fentanyl-laced heroin and cocaine base to DTO Phone customers each day.

<b><u>Maximum Statutory Penalties</u></b>

7.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

        a.      A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $1,000,000.  Defendant further understands that the Court also must impose a term of supervised release of at least three years, and up to any number of years, including life.

        b.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

<b><u>Sentencing Guidelines Calculations</u></b>

8.      Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

6

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.      **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

b.      **Offense Level Calculations**.

i.      The government's position is that the amount of controlled substances involved in the offense and relevant conduct for which defendant is held

7

accountable is approximately 668 grams of fentanyl-laced heroin and approximately 257.6 grams of cocaine base. Those substances yield a Converted Drug Weight of approximately 2,589 kilograms. Therefore, the base offense level is 30 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(5) because the offense involved more than 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight.[1] Defendant will provide his position on the amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant should be held accountable at sentencing.

ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

---

[1]  The Sentencing Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual, contains a powder-to-crack cocaine disparity. As set forth in testimony before Congress on June 22, 2021, the Department of Justice supports elimination of the powder-to-crack sentencing disparity. The Court may, consistent with the law and current sentencing framework, consider the disparity in assessing the section 3553(a) factors at sentencing. In this case, if crack cocaine was treated as powder cocaine under the Sentencing Guidelines Manual currently in effect, the base offense level for defendant would remain at 30 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(5), because 668 grams of fentanyl and 257.6 grams of cocaine is the equivalent of 1,722 kilograms of Converted Drug Weight, which is more than 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight.

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**.  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant has 10 criminal history points and a criminal history category of V:

i.      On or about February 28, 2007, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 8 days' imprisonment and 30 months' probation.  Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this conviction.

ii.      On or about April 20, 2007, defendant was convicted of unlawful possession of a firearm by a felon in the Circuit Court of Cook County, Illinois, and sentenced to two years' imprisonment.  Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

9

iii.     On or about August 19, 2009, defendant was convicted of gambling in the Circuit Court of Cook County, Illinois, and sentenced to two days' imprisonment. Pursuant to Guideline § 4A1.2(c)(1) and (e)(3), defendant receives zero criminal history points for this conviction.

iv.     On or about September 9, 2010, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to one year of imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this conviction.

v.     On or about October 27, 2010, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to one year of imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this conviction.

vi.     On or about February 16, 2017, defendant was convicted of driving on a suspended/revoked license in the Circuit Court of Cook County, Illinois, and sentenced to 4 days' imprisonment. Pursuant to Guideline § 4A1.2(c)(1), defendant receives zero criminal history points for this conviction.

vii.     On or about March 1, 2017, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to four years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

d.  **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 27, which, when combined with the anticipated criminal history category of V, results in an anticipated advisory Sentencing Guidelines range of 120 to 150 months' imprisonment, in addition to any supervised release and fine the Court may impose.  Defendant will provide his position on the applicable advisory Sentencing Guidelines range at sentencing.

e.  Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the

11

sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $270 as compensation for government funds that defendant received during the investigation of the case.

12

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant agrees to waive and abandon any right, title, or interest he has in the following property: the cellular telephone assigned telephone number (312) XXX-4490, which has been referred to as the DTO Phone in this agreement. Defendant understands that the government, after publication of notice to others who may have an interest in the above property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment as to defendant, as well as the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 577.

13

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

14

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

15

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify on his own behalf.

b.     **Appellate rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters.  The government will make known all matters in aggravation and mitigation relevant to sentencing.

16

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer.  Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**Conclusion**

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.   Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement.   Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

18

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ____1/24/2024____


_Morris Pasqual_ by SME                           Tyjuan McDowell
MORRIS PASQUAL                                    TYJUAN MCDOWELL
Acting United States Attorney                      Defendant


PRASHANT          Digitally signed by PRASHANT
                  KOLLURI
KOLLURI           Date: 2024.01.02 13:32:27
                  -06'00'                          [signature]
PRASHANT KOLLURI                                  JOSHUA B. ADAMS
Assistant U.S. Attorney                           Attorney for Defendant


20