FILED
1/26/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 577-13 |
| v. | |
| PAUL WILKINS | Judge Elaine E. Bucklo |

### PLEA AGREEMENT

1.     This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant PAUL WILKINS, and his attorney, GARY W. ADAIR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with (a) conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count One), and (b) distribution of fentanyl, heroin, and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Seventeen, Eighteen, Nineteen, and Twenty-Two).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

From in or around April 23, 2020, and continuing through in or around September 1, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant PAUL WILKINS, conspired with Dexstin Bryant, also

2

known as "Dex," Tremaine Brent, also known as "Bud," Johnnie Grant, also known as "Johnno," Tevin Alverio, also known as "Tevo," Jarvis Blair, Enrique Hollins, also known as "Rique," Shauntrell Harris, also known as "Trell," Sharonda Hosey, also known as "Ronda," Justin Johnson, also known as "BB," Tyjuan McDowell, also known as "Weezy," Rikita Mitchell, Allen Washington, also known as "Peanut," Ina Williams, Oshay Kelley, Dorothy Williams (collectively, the "co-defendants") and others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

More specifically, from approximately April 23, 2020, through approximately September 1, 2020, WILKINS conspired with the co-defendants and others to distribute controlled substances, specifically fentanyl-laced heroin and cocaine base, to customers primarily on the west side of Chicago. This narcotics-trafficking conspiracy involved the drug trafficking organization managed and operated by co-defendant Bryant (the "Bryant DTO"). The Bryant DTO used telephone number (312) XXX-4490 (the "DTO Phone") as a call-up narcotics delivery phone line. Workers for the Bryant DTO took shifts answering the DTO Phone, which was pre-programmed

with customer numbers, took orders for narcotics placed by customers over the DTO Phone, and delivered the ordered narcotics to those customers.

Co-defendant Grant operated the Bryant DTO's stash house out of his residence, which was located on the 800 block of South Karlov Avenue in Chicago, Illinois (the "Grant Residence"). The Grant Residence served as the headquarters for the Bryant DTO, and the place where shift workers commonly transferred the DTO Phone to others at the beginning and end of their shifts, delivered proceeds from narcotics sales that were coordinated using the DTO Phone, and picked up or dropped off narcotics that were to be sold to customers who ordered narcotics using the DTO Phone. WILKINS worked the DTO Phone beginning on or about August 6, 2020, passing the phone to other conspirators when he was not in possession of it. As part of his responsibilities as a worker, WILKINS transferred the DTO Phone, narcotics, and narcotics proceeds to other conspirators.

For instance, on August 6, 2020, WILKINS went to the Grant Residence to turn in the DTO Phone so that co-defendant McDowell could collect the phone to work the next shift. Earlier that same day, WILKINS sold fentanyl-laced heroin and cocaine base to an undercover law enforcement officer ("UC-2") posing as a DTO Phone customer. Specifically, on August 6, 2020, at approximately 5:31 p.m., after UC-2 and WILKINS coordinated a time and place over the DTO Phone to meet to complete a narcotics transaction, UC-2 entered the rear passenger side of WILKINS' vehicle, where WILKINS provided UC-2 with two small clear Ziploc-style baggies

4

containing cocaine base and seven clear Ziploc-style baggies containing fentanyl-laced heroin in exchange for $90. WILKINS acknowledges that the baggies that WILKINS sold to UC-2 contained approximately 2.53 grams of fentanyl-laced heroin and .15 grams of cocaine base.

WILKINS further acknowledges that, between August 6, 2020, and September 1, 2020, WILKINS and others whose actions were (a) within the scope of the jointly undertaken criminal activity, (b) in furtherance of that activity, and (c) reasonably foreseeable to WILKINS, distributed fentanyl-laced heroin and cocaine base to DTO Phone customers each day. WILKINS, the co-defendants, and others distributed approximately 8.35 grams of fentanyl-laced heroin and approximately 3.22 grams of cocaine base to DTO Phone customers each day during that period, for a total of 225.45 grams of fentanyl-laced heroin and 86.94 grams of cocaine base.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the Court also may impose a term of supervised release of at least three years, and up to any number of years, including life.

b.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.      Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

6

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

      b.    **Offense Level Calculations**.

      i.    The amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is held accountable is approximately 225.45 grams of fentanyl and approximately 86.94 grams of cocaine base. Those substances yield a Converted Drug Weight of approximately 874.087 kilograms. Therefore, the base offense level is 28 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(6) because the offense involved more than 700 kilograms but less than 1,000 kilograms of Converted Drug Weight.

      ii.    The Sentencing Guidelines Manual currently in effect, namely, the November 2023 Guidelines Manual, contains a powder-to-crack cocaine disparity. The Department of Justice supports eliminating the powder-to-crack sentencing disparity, and will therefore advocate for a sentence consistent with the Guidelines for powder cocaine rather than crack cocaine. The Court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the section 3553(a) factors at sentencing. Because, as set forth below, the defendant is a career offender, the powder-to-crack disparity does not impact defendant's Guidelines range.

iii.     It is the defendant's position that, pursuant to Guideline § 3B1.2(a), there is a two-level reduction in defendant's offense level because defendant was a minor participant in the criminal activity. It is the government's position that this reduction does not apply. Each party is free to present evidence and argument to the Court on the issue.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 19 and defendant's criminal history category is VI:

i. On or about July 24, 1972, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's probation. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

ii. On or about January 22, 1973, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

iii. On or about November 21, 1975, defendant was convicted of possessing a firearm in public in the Circuit Court of Cook County, Illinois, and sentenced to 18 months' imprisonment. Pursuant to Guideline §§ 4A1.2(a)(2) and 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

iv. On or about November 21, 1975, defendant was convicted of possessing a firearm in public in the Circuit Court of Cook County, Illinois, and sentenced to 18 months' imprisonment. Pursuant to Guideline §§ 4A1.2(a)(2) and 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

v.      On or about March 13, 1979, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

vi.      On or about April 5, 1982, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to 4 years and 8 months' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

vii.      On or about May 1, 1987, defendant was convicted of possessing a stolen vehicle in the Circuit Court of Cook County, Illinois, and sentenced to 4 years' probation. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

viii.      On or about May 29, 1981, defendant was convicted of possessing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 4 months' probation. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

ix.      On or about June 25, 1991, defendant was convicted of retail theft in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

x.      On or about January 5, 1994, defendant was convicted of retail theft in the Circuit Court of Cook County, Illinois, and sentenced to 4 years' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xi.      On or about September 8, 1995, defendant was convicted of attempt in the Circuit Court of Cook County, Illinois, and sentenced to 1 day's imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xii.      On or about January 5, 1994, defendant was convicted of retail theft in the Circuit Court of Cook County, Illinois, and sentenced to 4 years' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xiii.      On or about July 31, 1998, defendant was convicted of possessing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 7 years' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xiv.      On or about October 21, 1997, defendant was convicted of obstructing the peace and traffic offenses in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's conditional discharge. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xv.     On or about July 31, 1998, defendant was convicted of possessing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 1 year's imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives zero criminal history points for this sentence.

xvi.     On or about November 20, 2002, defendant was convicted of possessing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 24 months' probation. On or about September 21, 2003, defendant's probation was revoked and he was sentenced to 3 years' imprisonment. Pursuant to Guideline §§ 4A1.2(e)(1) and 4A1.2(k)(1), defendant receives three criminal history points for this sentence.

xvii.     On or about October 28, 2004, defendant was convicted of possessing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 2 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

xviii.     On or about October 19, 2005, defendant was convicted of distributing a controlled substance and possessing a firearm as a felon in the Circuit Court of Cook County, Illinois, and sentenced to 6 years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(a)(2), defendant receives three criminal history points for this sentence.

xix.     On or about July 14, 2010, defendant was convicted of burglary in the Circuit Court of Cook County, Illinois, and sentenced to 7 years and

12

6 months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

        xx.      On or about August 13, 2013, defendant was convicted of distributing a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 6 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

        xxi.      On or about September 22, 2017, defendant was convicted of driving on a revoked license in the Circuit Court of Cook County, Illinois, and sentenced to 60 days' imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this sentence.

        xxii.      On or about March 26, 2019, defendant was convicted of possessing a controlled substance in the Circuit Court of Kankakee County, Illinois, and sentenced to 36 months' probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

        xxiii.      Pursuant to Guideline § 4A1.1(e), defendant receives one additional criminal history point because defendant receives seven or more points under subsections (a) through (d) of Guideline § 4A1.1, and committed the instant offense while under a criminal justice sentence, namely, probation, for the conviction set forth in subparagraph 9(c)(xxii).

        d.    **Career Offender.** Defendant is a career offender, pursuant to Guidelines §§ 4B1.1(a) and 4B1.2, because defendant was at least eighteen years old

at the time he committed the instant offense of conviction; the instant offense of conviction is a controlled substance offense; and the defendant committed the instant offense of conviction subsequent to sustaining two or more controlled substances offenses, namely, the convictions set forth in Paragraphs 9(c)(xviii) and 9(c)(xx) above. Therefore, pursuant to Guidelines § 4B1.1(b)(3), the offense level is 32 because the instant offense of conviction carries a statutory maximum of 20 years, and this offense level is greater than the offense level otherwise applicable. Also, pursuant to Guidelines § 4B1.1(b), defendant's criminal history category is VI.

e. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 29 which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 151 to 188 months' imprisonment, in addition to any supervised release and fine the Court may impose. It is the defendant's position that the anticipated offense level is 27, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 130 to 162 months' imprisonment, in addition to any supervised release and fine the Court may impose.

f. Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant

14

understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $200 as compensation for government funds that defendant received during the investigation of the case.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15.     Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

16

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 577-13.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

19

**Presentence Investigation Report/Post-Sentence Supervision**

21.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax

20

returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____ *1-26-24*

_____
MORRIS PASQUAL *by SME*
Acting United States Attorney

RAMON VILLALPANDO
Digitally signed by RAMON VILLALPANDO
Date: 2024.01.25 17:57:02 -06'00'

_____
RAMON VILLALPANDO
Assistant U.S. Attorney

_____
PAUL WILKINS
Defendant

_____
GARY W. ADAIR
Attorney for Defendant

23