

FILED
1/31/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 577-9 |
| v. | |
| JUSTIN JOHNSON | Judge Elaine E. Bucklo |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant JUSTIN JOHNSON, and his attorney, KERI A. AMBROSIO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with (a) conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count One), and (b) distribution of fentanyl and heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Five, Seven, Eight, Nine, Thirteen, and Twenty-Three).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment, which charges defendant with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline §1B1.3:

From in or around April 23, 2020, and continuing through in or around September 1, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JUSTIN JOHNSON, also known as "BB," conspired with

2

Dexstin Bryant, also known as "Dex," Tremaine Brent, also known as "Bud," Johnnie Grant, also known as "Johnno," Tevin Alverio, also known as "Tevo," Jarvis Blair, Enrique Hollins, also known as "Rique," Shauntrell Harris, also known as "Trell," Sharonda Hosey, also known as "Ronda," Tyjuan McDowell, also known as "Weezy," Rikita Mitchell, Allen Washington, also known as "Peanut," Paul Wilkins, Ina Williams, Oshay Kelley, Dorothy Williams (collectively, the "co-defendants") and others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

More specifically, from approximately April 23, 2020, through approximately September 1, 2020, JOHNSON conspired with the co-defendants and others to distribute controlled substances, specifically fentanyl-laced heroin and crack cocaine, to customers primarily on the west side of Chicago. This narcotics-trafficking conspiracy involved the drug trafficking organization managed and operated by co-defendant Bryant (the "Bryant DTO"). The Bryant DTO used telephone number (312) XXX-4490 (the "DTO Phone") as a call-up narcotics delivery phone line. Workers for

3

the Bryant DTO took shifts answering the DTO Phone, which was pre-programmed with customer numbers, took orders for narcotics placed by customers over the DTO Phone, and delivered the ordered narcotics to those customers.

Co-defendant Grant operated the Bryant DTO's stash house out of his residence, which was located on the 800 block of South Karlov Avenue in Chicago, Illinois (the "Grant Residence"). The Grant Residence served as the headquarters for the Bryant DTO, and the place where shift workers commonly transferred the DTO Phone to others at the beginning and end of their shifts, delivered proceeds from narcotics sales that were coordinated using the DTO Phone, and picked up or dropped off narcotics that were to be sold to customers who ordered narcotics using the DTO Phone. JOHNSON worked the DTO Phone beginning on or around June 16, 2020, passing the phone to other conspirators when he was not in possession of it. As part of his responsibilities as a worker, JOHNSON transferred the DTO Phone, narcotics, and narcotics proceeds to other conspirators.

For instance, on June 16, 2020, JOHNSON and co-defendant Brent met in Chicago and, during that meeting, Brent resupplied JOHNSON with narcotics for his shift working the DTO Phone. In exchange, JOHNSON gave Brent the proceeds from the narcotics sales he had already made from working the DTO Phone.

That same day, JOHNSON sold fentanyl-laced heroin to an undercover law enforcement officer ("UC-3") posing as a DTO Phone customer. Specifically, on June 16, 2020, JOHNSON sold 10 small blue Ziploc-style baggies containing fentanyl-laced

4

heroin to UC-3 in exchange for $100. JOHNSON acknowledges that the ten baggies that JOHNSON sold to UC-3 contained approximately 3.5 grams of fentanyl-laced heroin.

JOHNSON further acknowledges that, between June 16, 2020, and September 1, 2020, JOHNSON and others whose actions were (a) within the scope of the jointly undertaken criminal activity, (b) in furtherance of that activity, and (c) reasonably foreseeable to JOHNSON, distributed fentanyl-laced heroin and cocaine base to DTO Phone customers each day. JOHNSON, the co-defendants, and others distributed approximately 8.35 grams of fentanyl-laced heroin and approximately 3.22 grams of cocaine base to DTO Phone customers each day during that period, for a total of 651.30 grams of fentanyl-laced heroin and 251.16 grams of cocaine base.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $5,000,000. Defendant further understands that the Court also must impose a term of supervised release of at least four years, and up to any number of years, including life.

5

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

6

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

      b.      **Offense Level Calculations**.

           i.      The amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is held accountable is approximately 651.30 grams of fentanyl and approximately 251.16 grams of cocaine base. Those substances yield a Converted Drug Weight of approximately 2,525 kilograms. Therefore, the base offense level is 30 pursuant to Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(5) because the offense involved more than 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight.

           ii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

           iii.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        iv.        If the Court determines that Guideline § 5C1.2 and Title 18, United States Code, Section 3553(f) are applicable, the Court shall impose a sentence without regard to any statutory minimum sentence, and the offense level shall be reduced by two levels, pursuant to Guideline § 2D1.1(b)(18).

        c.        **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal three and defendant's criminal history category is II:

        i.        On or about March 6, 2018, defendant was convicted of aggravated vehicular hijacking in the Circuit Court of Cook County, Illinois, and sentenced to eleven years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

        d.        **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 27 which, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 78 to 97 months'

8

imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment, if the Court determines that it applies.

      e.    The Sentencing Guidelines Manual currently in effect, namely, the November 2023 Guidelines Manual, contains a powder-to-crack cocaine disparity. The Department of Justice supports eliminating the powder-to-crack sentencing disparity, and will therefore advocate for a sentence consistent with the Guidelines for powder cocaine rather than crack cocaine. The Court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the section 3553(a) factors at sentencing. If crack cocaine was treated as powder cocaine under the Sentencing Guidelines Manual currently in effect, then (1) the base offense level would remain Level 30, pursuant to Guideline § 2D1.1(c)(5), because 651.30 grams of fentanyl and 251.16 grams of cocaine is the equivalent of 1,678 kilograms of Converted Drug Weight, which is at least 1,000 kilograms, but less than 3,000 kilograms of Converted Drug Weight, and (2) the applicable Sentencing Guidelines range, after the reduction for timely acceptance of responsibility, would remain 78 to 97 months' imprisonment, in additional to any supervised release and fine the Court may impose.

      f.    Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant

9

understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $690 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment and the forfeiture allegation as to defendant.

## **Acknowledgments and Waivers Regarding Plea of Guilty**

### **Nature of Agreement**

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 577-9.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### **Waiver of Rights**

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.        If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.        If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.        If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.        At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

13

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

14

**Presentence Investigation Report/Post-Sentence Supervision**

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax

15

returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 1·31·24

_Morris Pasqual_ by SME
MORRIS PASQUAL
Acting United States Attorney

RAMON VILLALPANDO
Digitally signed by RAMON VILLALPANDO
Date: 2024.01.25 17:44:35 -06'00'

RAMON VILLALPANDO
Assistant U.S. Attorney

JUSTIN JOHNSON
Defendant

KERI A. AMBROSIO
Attorney for Defendant